# In the United States Court of Federal Claims

### Nos. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04-1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04-1471L, 04-1472L, 04-1473L, 04-1474L

### Filed: April 12, 2010

```
*   *   *   *   *   *   *   *   *   *   *   *
WARREN BERES and VICKI            *
BERES, et al.,                    *
                                  *
            Plaintiffs,           *
                                  *   Fifth Amendment Takings Claim;
v.                                *   Rails to Trails; Rooker-Feldman
                                  *   Doctrine; Collateral Estoppel;
UNITED STATES,                    *   Privity; Virtual Representation.
                                  *
            Defendant.            *
                                  *
                                  *
*   *   *   *   *   *   *   *   *   *   *   *
```

**John M. Groen**, Groen Stephens & Klinge, LLP, Bellevue, Wash., and **Cecilia C. Fex**, Ackerson Kauffman Fex, P.C., Washington, D.C., for the plaintiffs.

**Bruce K. Trauben**, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendant.

## O P I N I O N

**HORN, J.**

At issue is a rail-banked right of way along the eastern shore of Lake Sammamish in King County, Washington. The plaintiffs allege that when the United States Department of Transportation, Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU), the federal government denied plaintiffs a reversionary interest in the right of way located on their properties, formerly occupied by the railroad. Plaintiffs in this consolidated action each allege a taking, compensable under the Fifth Amendment to the United States Constitution. Previously, this court issued an opinion in the consolidated cases, denying a motion for summary judgment by the defendant regarding the interpretation of the General Railroad Act of 1875, 18 Stat. 482, 43 U.S.C. §§ 934 et seq. (repealed 1976), and the effect on plaintiffs Warren

and Vicki Beres.  See Beres v. United States, 64 Fed. Cl. 403 (2005).  The present opinion addresses issues of collateral estoppel raised as an affirmative defense by the defendant following state court litigation.

## FINDINGS OF FACT

The railroad line in question was originally constructed by the Seattle, Lake Shore & Eastern Railway Company (SLS&E) from May 1887 through March 1888. During May and June 1887, the SLS&E acquired the land needed to construct the railroad along the eastern shore of Lake Sammamish by "right of way deeds" granted by plaintiffs' predecessors in title to the railroad: Louis and Mary Tahalthkut for Schroeder, Bill and Mary Hilchkanum for Ray, George and Elizabeth Davis for Klein, Bill and Lucinda Sbedzuse[1] for Peterson and Lane (on the same deed), Jim and Alice Yonderpump for Spencer, and Alfred Palmberg for Nelson and Collins (on the same deed) (the Right of Way Deeds). The deed in Manning was acquired by the Northern Pacific Railway Company (Northern Pacific), successor of SLS&E, on June 3, 1904 by Quit Claim Deed (the Quit Claim Deed) from the Manning plaintiffs' predecessor in title, J.D. and Elizabeth Reeves.[2]

In pertinent part, the Right of Way Deeds have the following format:

In Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory we do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands in said County, described as follows, to wit:

[specific description of Lot, and Section].

Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said Railway Company, which location is described as follows, to wit:

[description of the metes and bounds].

---

[1] The Joint Stipulation of Issue and Fact states the spelling of the last name for Bill and Lucinda as "Sbedzuse." The Joint Stipulation for additional transcribed documents states the last name for Bill as "Sbedzuse."  Although the name is not clear on the copies of the original documents, this opinion will use Sbedzuse.

[2] Originally the consolidated cases also included claims by Douglas Edlund, Robert and Denise Rundle and Fredrick and Karen Horvath, which were dismissed from the consolidated cases on May 14, 2007.

And the said Seattle, Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

To Have and to Hold said premises with the appurtenances unto the said party of the second part, and to its successors and assigns forever.

In Witness Whereof the parties of the first part have hereunto set their hands and seals this __ day of [Month], A.D. 1887.

The deeds in Schroeder, Ray, Klein, Peterson, Lane, and Spencer follow this form.  The deed at issue in Nelson and Collins also follows the same format, but contains the following additional sentence after the habendum clause: "All riparian and water front rights on Lake Samamish [sic] are hereby expressly reserved."

The second type of deed in this case, the June 3, 1904 Quit Claim Deed at issue in Manning, was conveyed to Northern Pacific by Quit Claim deed.  It states, in pertinent part:

This Indenture made this third day of June in the year of our Lord one Thousand nine hundred and four, Between J.D. Reeves and Elizabeth Jane Reeves, his wife, the parties of the first part and the Northern Pacific Railway Company, a corporation, the party of the second part, Witnesseth: That the said parties of the first part for and in consideration of the sum of One hundred Fifty dollars of the United States to them in hand paid by the said party of the second part, the receipt of whereof is hereby acknowledged do by these presents, remise, and release, and forever quit claim unto the said party of the second part and to its assigns all right, title and interest and estate of said first parties in and to all that certain lot, piece or parcel of land, situate lying and being in the County of King, State of Washington, and particularly bounded and described as follows, to wit:

The interest of said grantors in and to a tract of Land lying within lines drawn parallel with with [sic] the center of the main Line track and fifty feet from said center of the main Line track and fifty feet from said center of the Seattle, Lake Shore & Eastern Railway, now the Northern Pacific Railway, through the Townsite of Inglewood, King County, State of Washington, and running from Ash Street to Willow Streets and through the following Blocks in said Townsite; [list of blocks] according to the plat of said Town of Inglewood as recorded in Volume three, of Plat books, page 169 records of King County, Washington; the intention being to convey herein a right of way fifty feet on each side of said track through any lots or blocks conveyed to the Grantor J.D. Reeves by grant of date,

November 13, 1903, from King County, Washington, said lots being as follows, [list of lots and blocks],

Together with all and singular the tenements, hereditaments and appurtenances thereunto, belonging, or in anywise appertaining, and the reversions, remainder and remainders, rents, issues and profits thereof.

To have and to hold all and singular the said premises together with the appurtenances, unto said party of the second part and to its heirs and assigns forever.  In witness whereof, The said parties of the first part have hereunto set hands and seals the day and year first above written.

## **Schroeder, No. 04-1456L**

The plaintiffs in Schroeder[3] are successors in title to Louis and Mary Tahalthkut, who conveyed the right of way to the SLS&E by deed dated May 6, 1887. The Talhalthkuts' property included Lot 4 and the S.E. ¼ of the S.W. ¼ of  Sec. [Section] 32 T. [Township] 25 N. [North] R. [Range] 6 E. [East]. The railroad strip runs across only Lot 4 of the Talhalthkuts' former property.

After purchasing the property, Louis Tahalthkut entered into an agreement with Daniel J. Reichert on June 22, 1889 to sell and convey to him all timber for logging that was on Louis Tahalthkut's property. The agreement stated "all and singular the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land situate lying and being in King County, Washington Territory and particularly described as follows…," and Daniel J. Reichert agreed to take and buy the same.   After Louis Tahalthkut died, Mary Tahalthkut conveyed the described property to T.N. Tallentire by Warranty Deed, dated May 4, 1907. The deed is silent regarding the railroad right of way. Ultimately, the parcel in Lot 4 was conveyed to plaintiffs Clifford F. and Kathryn L. Schroeder by Statutory Warranty Deed dated March 29, 1974, which also was silent on the right of way.

## **Ray, No. 04-1457L**

The plaintiffs in the Ray[4] case are successors in title to Bill and Mary Hilchkanum, who conveyed the right of way to SLS&E by deed dated May 9, 1887. This

---

[3] The plaintiffs in Schroeder are Clifford F. and Kathryn L. Schroeder (husband and wife).

[4] The plaintiffs in Ray are Gerald and Kathryn Ray (husband and wife), Martin and Carol Chamberlin (husband and wife), Craig and Tammy Owens, Jeffrey and Sandra Sheehan (husband and wife), Steven and Susan Roberts (husband and wife), Frederic and Linda Vicik (husband and wife), Steven and Karin Farrar (husband and wife), Hank and Eden Waggoner (husband and wife), Patrick and Chenoa Haluptzok (husband and

deed included Lots 1, 2, and 3 in section six (6) township 24 North of Range six (6) East. The railroad right of way runs across all three of these lots.

On December 15, 1890, Bill and Anna Hilchkanum conveyed "[a]ll of lot two (2) in section six (6) township twenty-four (24) north of range six (6) east of Willamette Meridian containing twenty-one and eighty hundredths (21 80/100) acres," to Julia Curley without mention of the right of way.  On December 16, 1898, Bill Hilchkanum conveyed to his then-wife, listed as Annie Hilchkanum,[5] "Lot one (1) less three (3) acres of right of way of railroad and lot three (3) less three and 25/100 acres right of way of railroad, and all of lot five (5) in all section six (6) in township twenty four (24) N. [North] of range six (6) east."  On March 15, 1904, Bill Hilchkanum conveyed to Chris Nelson, the same lot, without mention of the right of way.  Also on March 15, 1904, Louise Hilchkanum, Bill Hilchkanum's wife at the time, conveyed by Quit Claim deed to Chris Nelson, Lot 1 "less three (3) acres heretofore conveyed to the Seattle & International Railway Company for right of way purposes."  This is the same property in Lot 1 which Bill Hilchkanum conveyed to his former wife Annie.  On June 30, 1905, Bill Hilchkanum conveyed part of Lot 3 to John Hirder by warranty deed.  Once again, this is the same property previously conveyed to his former wife Annie.  That deed describes the boundary of the property, in relevant part, as running "thence in a Northeasterly direction along the right of way of the Seattle Lake Shore & Eastern Railway…."  On, March 3, 1909, Bill Hilchkanum conveyed another portion of Lot 3 by Quit-Claim Deed to Chas Edeen, which described the conveyance as including "[a]ll of the land situated in lot three (3) of Section six (6)... excepting the Northern Pacific Ry. right of way...."  Oddly, this appears to be the third conveyance by Bill Hilchkanum of Lot 3, previously deeded to his former wife Annie and then to John Hirder.  Gerald and Kathryn Ray purchased their property from Frank J. and Mary Tate Klemens by Statutory Warranty Deed on December 30, 1994.

## Klein, No. 04-1458L

The plaintiffs in Klein[6] are successors in title to George and Elizabeth Davis, who conveyed the railroad right of way to SLS&E by deed dated May 6, 1887.  The Davis' property included Lot 1 and the N.W. ¼ of the N.E. ¼ of Section 32, T. [Township] 25 N. [North] R. [Range] 6 E. [East].  The railroad strip runs over Lot 1 of the Davis' former property.  On June 30, 1902, George Davis conveyed Lot 1 by Warranty Deed to the

---

wife), Lester and Barbara Peterson (husband and wife), Lauren Jenkins, J. Terry Pietromonaco, Gary Nelson, and Hans Apel and Pamela Burton (husband and wife).  J. Terry Pietromonaco  is listed as both "J. Terry Pietromonaco" and "Terry Pietromonaco" in the complaint.

[5] Although listed as both "Annie" and "Anna" on different deeds, both deeds list Annie or Anna as Bill Hilchkanum's wife.  This opinion will use "Annie" to identify this wife of Bill Hilchkanum.

[6] The plaintiffs in Klein are Henry D. and Judy D. Klein (husband and wife).

Lake Sammamish Shingle Company. That deed is silent as to the railroad right of way. On September 17, 1987, plaintiffs Henry D. and Judy D. Klein acquired their interest by statutory deed.

## Peterson, No. 04-1459L, and Lane, No. 04-1468L

The plaintiffs in Peterson[7] and Lane[8] are successors in title to Bill and Lucinda Sbedzuse, who conveyed the railroad strip to the SLS&E by deed dated May 6, 1887. This property included Lot 3 and the N.E. ¼ of the S.W. ¼ of Section 32, T. [Township] 25 N., [North] R. [Range] 6 E. [East].  The railway right of way ran through both Lot 3 and the N.E. ¼ of the S.W. ¼ of Section 32.

In 1889, Bill Sbedzuse entered into an agreement with Daniel J. Reichert, similar to the agreement Louis Tahalthkut entered into with Daniel J. Reichert, when selling all timber rights suitable for logging on his property to Mr. Reichert.  On August 5, 1905, Bill Sbedzuse conveyed by warranty deed his undivided two thirds interest in Lot 3 and the N.E. ¼ of Section 32 to G.R. Fisher. That deed is silent with respect to the railroad right of way.

Plaintiff Phyllis Lane, with Robert Lane, acquired a portion of Lot 3, in Section 32, Township 25 North, Range 6 E., W.M., by a Statutory Warranty Deed dated June 25, 1973.  The deed for two of the co-plaintiffs in Peterson, J. Herb and Judith D. Gilbo, also is in the record.  The Gilbos acquired their interest in a parcel within Lot 3 of Section 32 by Statutory Warranty Deed dated November 4, 1982.  In addition, Peterson co-plaintiff George W. Raab's deed is included in the record.  The Statutory Warranty Deed indicates that the property was conveyed to George Raab and Mildred M. Raab, his wife, by Hilda and Francis Sprague on February 27, 1947.  None of the deeds for the other plaintiffs in Peterson, were included in the record.

## Spencer, No. 04-1463L

The plaintiffs in Spencer[9] are successors in title to Jim and Alice Yonderpump, who conveyed the right of way to SLS&E on May 6, 1887.  The Yonderpump's property

---

[7] The plaintiffs in Peterson are Clarence A. Peterson, George W. Raab, Donna Marie Raab Martinez, and J. Herb and Judith D. Gilbo (husband and wife).  Judith Gilbo is listed as both "Judith D. Gilbo" and "Judith T. Gilbo" in the complaint.

[8] The plaintiff in Lane is Phyllis Lane.

[9] The plaintiffs in Spencer are Raymond and Lael Spencer (husband and wife), James and Billie Cairns (husband and wife), Thomas and Angela Napier (husband and wife), William and Lynda Ott (husband and wife), William and Carolyn Daly (husband and wife), Douglas and Joyce McCallum (husband and wife), Evan and Beverly Helling (husband and wife), Reid and Susan Brockway (husband and wife), Phillip and Arlene Pielemeier (husband and wife), Jorge and Kristine Calderon (husband and wife), Robert

included Lot 2 and S.W. ¼ of N.E. ¼ of Section 32. T. [Township] 25 N. [North] R. [Range] 6 E. [East].  The railroad right of way runs over Lot 2.

Alice Zacuse, Jim Yonderpump's widow, and her current husband Jim Zacuse, subsequently conveyed a portion of Lot 2 to George Clark and Tolle Anderson by Quit Claim deed dated October 26, 1911. The deed described the property as: "North twenty acres of Lot Two (2) Section Thirty two (32) Township Twenty five (25) North of Range six (6) E. W. M."  The deed did not mention the railway right of way.  On January 27, 1919, Alice Zacuse conveyed by Quit Claim Deed the remaining portion of Lot 2 to W. Baron Cook, again without mentioning the right of way.  None of the deeds for the plaintiffs in Spencer are in the record.

### Nelson, No. 04-1465 and Collins, No. 04-1472

The plaintiffs in Nelson[10] and Collins[11] are successors in title to Alfred Palmberg, who conveyed the right of way to the SLS&E by deed dated June 13, 1887.  Alfred Palmberg's property included Lots 1, 2, 3 and 4 and S.E. 1/4 of the N.W. 1/4 of Section 20, and Lot 2 in Section 19, all in Township 25 North, Range 6 East.  The right of way traverses the five lots, but not the S.E. 1/4 of the N.W. 1/4 of Section 20.  Alfred Palmberg's deed to SLS&E expressly reserved "[a]ll riparian and water front rights on Lake Samamish [sic]...."  Alfred Palmberg conveyed a portion of his land in Lots 2 and 3, in Section 20, to Alonzo Charles Stares by Warranty Deed dated March 30, 1893. The property is described, in relevant part, as, "[t]ogether with all riparian rights as reserved from the Seattle Lake Shore and Eastern Railway Company fronting upon and appurtenant to the land hereinbefore described."  Robert and Mary Beth Nelson[12] ultimately obtained their title from successors in interest to Alfred Palmberg by Partial Warranty/Fulfillment deed dated May 31, 1977.

---

Lester, John and Carolyn Rossi (husband and wife), Debra Grove, Douglas and Jill Hendel (husband and wife), the Welch Family LLC, the Estate of Mavis N. Welcome, Karen Gregory, and Diane Gregory.

[10]  The plaintiffs in Nelson, are Robert G. and Beth Nelson (husband and wife), the Estate of William F. Hughes, Jill Barney, William Hughes, and Charles Hughes.

[11]  The plaintiffs in Collins, are D. Mike and Vanessa Collins (husband and wife), George and Judith Sutherland (husband and wife), Howard and Pam Freedman (husband and wife), and Donald and Jean Barrett (husband and wife).

[12]  The name on the Partial Warranty/Fulfillment deed, "Mary Beth Nelson," was different than the name on the complaint, "Beth Nelson."

**Manning, No. 04-1466**

The plaintiffs in Manning[13] are successors in title to J.D. and Elizabeth Reeves who conveyed the right of way to Northern Pacific on June 3, 1904.  By Quit Claim Deed dated April 26, 1906, J.D. and Elizabeth Reeves conveyed to William J. Pickering their interest, "[e]xcepting and reserving, however, any part or parcel of the lands above described that may have been heretofore granted by the parties of the first part to the Northern Pacific Railway Company."

Plaintiff Joy Manning, a married person, acquired her interest in Lots 20, 21 and 22 in Block 3, Inglewood and Lot 1 in Block 4, Inglewood, by Statutory Warranty Deed dated November 19, 1984, "[e]xcept the southerly 11 feet of said Lot 20, and Except any portion thereof lying within the Northern Pacific Railroad Company Right of Way," applying to the deeds of Lots 20, 21, 22 and Lot 1.

**Prior Litigation**

In 1997, Burlington Northern, a successor in interest to the SLS&E's right of way, concluded that continued operation of the pertinent line was not economically viable. See Redmond-Issaquah R.R. Pres. Ass'n v. Surface Transp. Bd., 223 F.3d 1057, 1058 (9th Cir. 2000). Therefore, in 1998, Burlington Northern sought an exemption from the STB to abandon a 12.45 mile line of railroad on the eastern shore of Lake Sammamish, a portion of which traverses the plaintiffs' property. See Burlington Northern & Santa Fe Ry. Co. - Abandonment Exemption - in King County, WA, STB Docket No. AB-6 (Sub. No. 380X), 1998 WL 638432 (S.T.B. Sept. 16, 1998).

On May 13, 1998, the STB granted Burlington Northern an exemption to abandon a 12.45 mile length of railroad between milepost 7.3, near Redmond, and milepost 19.75, at Issaquah, in King County, Washington. See id. On September 16, 1998, the STB authorized The Land Conservancy (TLC) of Seattle and King County to assume financial responsibility for the right of way pursuant to the National Trails System Act Amendments of 1983, § 208, Pub. L. No. 98-11, 97 Stat. 42, 16 U.S.C. § 1247(d) (2000). See id.  The STB also authorized the issuance of a NITU for the Burlington Northern right of way, permitting King County and TLC to establish a trail over the railroad right of way.  The STB's ruling authorized the conversion of the railroad right of way into a recreational trail pursuant to 16 U.S.C. § 1247(d).  King County, Washington subsequently reached an agreement with Burlington Northern for use of the right of way for trail purposes.  Since the STB approved conversion of the railway to a trail, no railway carriers have used the railroad, and the tracks subsequently were removed from the right of way.

In 2000, plaintiffs Gerald L. and Kathryn B. Ray filed an action against King County, Washington to quiet title to enforce their ownership fee interest in the right of

---

[13] The plaintiffs in Manning, are Paul and Joy Manning (husband and wife) and the DeMeester Family Limited Partnership.

way.  Ray v. King County, No. 00-2-14946-8SEA, King County Supr. Ct.  The issue before the Washington state court was to determine the nature of the easement conveyed by the Hilchkanum deed to SLS&E, that is, whether the deed conveyed a fee simple or easement interest.  On cross motions for summary judgment, the King County Superior Court found that the original deed between the Hilchkanums and SLS&E conveyed a fee simple interest to SLS&E, and concluded, "title is quieted in King County in fee simple…."  Id.  The court, therefore, dismissed the Rays' claims, with prejudice.

The Rays sought direct review of the trial court's decision in the Washington State Supreme Court.  As briefing was nearing completion, however, the Washington Supreme Court transferred the matter to Division 1 of the Court of Appeals of Washington State.  The Washington State Court of Appeals affirmed the trial court's decision to quiet title in King County, holding that the Hilchkanum deed conveyed a fee interest in the right of way and not an easement.  See Ray v. King County, 86 P.3d 183, 198 (Wash. Ct. App. 2004).  The Rays then sought to appeal the decision to the Washington Supreme Court, which denied the petition for review. See Ray v. King County, 101 P.3d 421 (Wash. 2004) (table).

In addition, plaintiffs Clifford F. and Kathryn L. Schroeder, Henry D. and Judy D. Klein, Frederic and Linda Vicik, and George W. Raab, also brought state court actions to quiet title regarding their respective properties.  However, on October 8, 2002, after the King County Superior Court's decision in Ray v. King County, and after an adverse decision from the United States Court of Appeals for the Ninth Circuit in King County v. Rasmussen, 299 F.3d 1077 (9th Cir. 2002), cert. denied, 538 U.S. 1057 (2003), the above listed plaintiffs voluntarily dismissed their quiet title actions "to preserve any potential claims for compensation in the United States Court of Claims."  Following the dismissals in the Washington state court, the plaintiffs filed suits in the United States Court of Federal Claims, alleging that the federal government's actions constituted a taking without compensation in violation of the Fifth Amendment to the United States Constitution.

In January 2005, the plaintiffs filed a motion requesting certification to the Washington State Supreme Court on questions of state law.  This court agreed and forwarded the following questions to the Supreme Court of the State of Washington:

> 1. When the granting clause of a deed expressly conveys a "right-of-way" to a railroad, does Washington state law hold that the property interest conveyed to the railroad is an easement as distinguishable from a fee simple?

> 2. Under Washington state law, did the above-quoted language of the 1887 deeds convey fee simple absolute interest in the Seattle Railway Company, or, instead, did the deeds convey an easement?

Plaintiffs' certification request, as forwarded to the Washington State Supreme Court, indicated that this court, the parties and other future litigants could benefit from additional guidance from the Supreme Court of Washington.

In the published order, which granted plaintiffs' motion to certify the questions to the Washington State Supreme Court, <u>Schroeder v. United States</u>, 66 Fed. Cl. 508 (2005), this court explained:

> Although the <u>Brown</u> court set out seven possible factors for consideration by other courts, whether the plaintiffs' deeds convey an easement or a fee is not easily determined without prioritization within the factors, and guidance regarding the seventh factor, which includes "many other considerations suggested by the language of the particular deed." Even the lower Washington state courts seem to arrive at differing resolutions. At a minimum, a declaration by the Supreme Court of Washington on this matter would be welcome in order to best resolve the issue of whether the multiple plaintiffs in the cases before this court can continue with their Fifth Amendment taking claims.

<u>Id.</u> at 519 (quoting <u>Brown v. State</u>, 924 P.2d 908, 912 (Wash.), <u>recons.</u> <u>denied</u>, (Wash. 1996).

The Supreme Court of the State of Washington, however, declined the request for certification, stating:

> The court is of the view that, in light of existing precedent such as <u>Brown v. State</u>, 130 Wn.2d 430, 924 P.2d 908 (1996) and <u>Ray v. King County</u>, 120 Wn. App. 564, 86 P.3d 183, <u>review</u> <u>denied</u>, 152 Wn.2d 1027 (2004), the questions posed by the federal court are not "question[s] of state law ... which [have] not been clearly determined."

Order at 1-2 (Wash. Oct. 7, 2005) (quoting Washington Rules of Appellate Procedure (RAP) 16.16(a) (2006)) (omissions in original). Plaintiffs sought reconsideration of the Washington Supreme Court's order denying review. The Washington Supreme Court indicated, however, that because the Washington Supreme Court had not granted review, its order was not subject to reconsideration, and the Washington Supreme Court closed the file without further action.

The opinion below addresses issues of collateral estoppel raised by defendant. The government argues that plaintiffs Gerald and Kathryn Ray and the <u>Ray</u> co-plaintiffs should be estopped from raising their takings claims based on the decisions of the Washington state court in <u>Ray v. King County</u>, 86 P.3d 183.

**DISCUSSION**

The first issue addressed in this opinion is whether jurisdiction is precluded by the Rooker-Feldman doctrine.  The court then considers whether Gerald and Kathryn Ray and the Ray co-plaintiffs are barred from litigating the nature of their property interest by the doctrine of collateral estoppel.

**Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine emanates from two United States Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and dictates that federal courts, other than the United States Supreme Court, do not have jurisdiction to review final state court judgments.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).

In Rooker v. Fidelity Trust Co., the plaintiff, after receiving an adverse judgment in the Indiana Supreme Court, filed suit in the United States District Court of Indiana.  Rooker v. Fidelity Trust Co., 263 U.S. at 414.  The United States Supreme Court determined that the District Court did not have jurisdiction to hear the case and concluded that only the United States Supreme Court has appellate jurisdiction over final decisions from state Supreme Courts.  For the District Court to review the merits of the state court judgment would "be an exercise of appellate jurisdiction.  The jurisdiction possessed by the District Courts is strictly original."  Id. at 416.  The United States Supreme Court affirmed the decision of the Indiana Supreme Court.

Sixty years after the Rooker v. Fidelity Trust Co. decision, the United States Supreme Court decided District of Columbia Court of Appeals v. Feldman.  In Feldman, the plaintiffs were denied admission to the District of Columbia bar by the District of Columbia Court of Appeals.  District of Columbia Court of Appeals v. Feldman, 460 U.S. at 468.  The plaintiffs filed suit in the United States District Court for the District of Columbia challenging the decision of the District of Columbia Court of Appeals.  Id. at 468-69.  On appeal to the United States Supreme Court, as it did in Rooker v. Fidelity Trust Co., the United States Supreme Court determined that the District Court lacked subject matter jurisdiction and that the only federal court with jurisdiction to review the merits of the District of Columbia Court of Appeals decision was the United States Supreme Court. Id. at 476 ("The District of Columbia Circuit properly acknowledged that the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings.  Review of such determinations can be obtained only in this Court.").  In both Rooker v. Fidelity Trust Co. and District of Columbia Court of Appeals v. Feldman, the United States Supreme Court concluded that a federal district court lacks jurisdiction to grant appellate review of final state court judgments.

In 2005, the United States Supreme Court, in Exxon Mobil Corporation v. Saudi Basic Industries Corporation, criticized lower federal courts for trying to extend the Rooker-Feldman doctrine "far beyond the contours of the Rooker and Feldman cases,

overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law…." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 283 (citations omitted); see also Lance v. Dennis, 546 U.S. 459, 464 (2006).  At issue in Exxon Mobil was whether, in parallel litigation in state and federal courts, the Rooker-Feldman doctrine would apply when the state court proceeding ended in judgment.  The United States Supreme Court, in an effort to limit the scope of the Rooker-Feldman doctrine, noted that "[s]ince Feldman, this Court has never applied Rooker-Feldman to dismiss an action for want of jurisdiction.  The few decisions that have mentioned Rooker and Feldman have done so only in passing or to explain why those cases did not dictate dismissal." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 287-88 (citing Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635 (2002); Johnson v. De Grandy, 512 U.S. 997 (1994); Howlett v. Rose, 496 U.S. 356 (1990); ASARCO Inc. v. Kadish, 490 U.S. 605 (1989); and Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987)).  The Supreme Court wrote: "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party…, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 293 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir.), reh'g denied, (7th Cir. 1993)).  The Supreme Court concluded: "[t]he Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284.  In finding the Rooker-Feldman doctrine did not apply to the case before it, the Supreme Court, in Exxon Mobil, reaffirmed the limitations of the scope of the Rooker-Feldman doctrine.  Id.

        In 2006, the United States Supreme Court again discussed the Rooker-Feldman doctrine.  In Lance v. Dennis, 546 U.S. 459, the Supreme Court noted that the United States Supreme Court has exclusive jurisdiction over final state court judgments and, "[a]ccordingly, under what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  Id. at 463.  The plaintiffs in Lance challenged the decision by the Colorado Supreme Court regarding Colorado's congressional redistricting plan by filing suit in the United States District Court for the District of Colorado.  The District Court determined that under the Rooker-Feldman doctrine, it did not have jurisdiction to hear the case, noting that parties in the federal suit were in privity with parties in the earlier state court action.  Id. at 462-63.  The United States Supreme Court vacated the District Court's ruling, noting that the plaintiffs were not parties to the state court action and concluding that: "[t]he District Court erroneously conflated preclusion law with Rooker-Feldman.  Whatever the impact of privity principles on preclusion rules, Rooker-Feldman is not simply preclusion by another name."  Id. at 466.  The Court held that: "[t]he Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."  Id. (footnote omitted).  In the

dissent, Justice Stevens called <u>Rooker</u> and <u>Feldman</u> "strange bedfellows" and praised the majority opinion for having "finally interred the so-called '<u>Rooker-Feldman</u> doctrine.'" Justice Stevens stated, "the Court quite properly disapproves of the District Court's resuscitation of a doctrine that has produced nothing but mischief for 23 years." <u>Id.</u> at 468 (Stevens, J., dissenting on other grounds).

In <u>Ray v. King County</u>, Gerald and Kathryn Ray commenced a quiet title action on their property. <u>Ray v. King County</u>, 86 P.3d at 185. The issue addressed in the court's opinion was when the SLS&E was granted a right of way, was it granted in fee simple or as an easement. In this court, the plaintiffs, including the Rays, present a constitutionally based claim that the United States has taken their property rights for which they are entitled to just compensation under the Fifth Amendment, based on the same issue as to the nature of the Rays' interest in the right of way granted to the SLS&E. While plaintiffs disagree with the reasoning expressed, and the result reached by, the Court of Appeals of Washington in the quiet title action in <u>Ray v. King County</u>, they do not challenge the finality of the decision in the Washington state courts with respect to the Rays' quiet title action. This court, therefore, concludes that the <u>Rooker-Feldman</u> doctrine does not bar presentation of plaintiffs' cases to this court.

**Collateral Estoppel**

Defendant argues that the Rays and the other plaintiffs whose property rights emanate from the Hilchkanum deed should be barred from relitigating that deed by the collateral estoppel doctrine or issue preclusion. Plaintiffs assert that all the requirements to establish collateral estoppel under Washington law have not been met. Plaintiffs contend that the Rays should not be barred from pursuing their claims in this court. Moreover, according to the plaintiffs the only parties in the <u>Ray v. King County</u> litigation were Gerald and Kathryn Ray and that the other plaintiffs now before the court are not in privity with the Rays and certainly should not be barred from pursuing their claims in this court.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). The Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, §1, as implemented by 28 U.S.C. § 1738 (2006), directs federal courts to give full faith and credit to the records and judicial proceedings of state courts, and states in part, "[s]uch Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such States, Territory or Possession from which they are taken." <u>Id.</u> The full faith and credit statute "requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment." <u>Marrese v. Am. Academy of Orthopedic Surgeons</u>, 470 U.S. 373, 381, <u>reh'g denied</u>, 471 U.S. 1062 (1985); <u>see also Graybill v. U.S. Postal Serv.</u>, 782 F.2d 1567, 1571 (Fed. Cir. 1986) ("The Full Faith and Credit Clause of the Federal Constitution, as implemented by 28 U.S.C. § 1738,

requires that state court judgments be given the same preclusive effect in later federal actions as they would be given under the laws of the state in which the judgments were rendered."), cert. denied, 479 U.S. 963 (1986). The parties do not dispute that Washington law governs the collateral estoppel inquiry.

As in the federal system, "[t]he doctrine of collateral estoppel is well-known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal. Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." Reninger v. Dep't of Corrections, 951 P.2d 782, 788 (Wash. 1998); see also Hanson v. City of Snohomish, 852 P.2d 295, 300 (Wash. 1993); Metro. Mortg. & Sec. Co. v. Cochran, 156 P.3d 930, 934 (Wash. Ct. App. 2007); Satsop Valley Homeowners Ass'n, Inc. v. Northwest Rock, Inc., 108 P.3d 1247, 1251 (Wash. Ct. App. 2005); State Farm Mut. Auto. Ins. Co. v. Avery, 57 P.3d 300, 304 (Wash. Ct. App. 2002).

Under Washington law, a four part test for collateral estoppel governs:

(1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied.

In re Stout, 150 P.3d 86, 97 (Wash. 2007); see also Reninger v. Dep't of Corrections, 951 P.2d at 788.

"Collateral estoppel is an affirmative defense. The party asserting it has the burden of proof." State Farm Mut. Auto. Ins. Co. v. Avery, 57 P.3d at 303; see also; Christensen v. Grant County Hosp. Dist. No. 1, 96 P.3d 957, 961 (Wash. 2004); Neilson v. Spanaway Gen. Med. Clinic, Inc., 956 P.2d 312, 316 (Wash. 1998) ("Before the doctrine of collateral estoppel may be applied, the party asserting the doctrine must prove" the four elements of collateral estoppel.); Carver v. State, 197 P.3d 678, 680 (Wash. Ct. App. 2008) ("In order to prevail on a claim of collateral estoppel, the party seeking application of the doctrine bears the burden….").

**Collateral Estoppel as Applied to Gerald and Kathryn Ray**

When examining the application of the four part collateral estoppel test, outlined above, as it applies to Gerald and Kathryn Ray, the parties agree that the first three factors are not at issue. In fact, plaintiffs concede that the first three factors are met, stating "[w]ith respect to Jerry [sic] and Kathy [sic] Ray, only the application of the fourth element is in dispute." Therefore, for collateral estoppel to apply, the fourth element, that the application of collateral estoppel will not work an injustice on the party against whom it is applied, must be examined as it pertains to Gerald and Kathryn Ray.

Even though collateral estoppel advances judicial economy and prevents relitigation, collateral estoppel "is not to be applied so rigidly as to defeat the ends of justice, or to work an injustice." Henderson v. Bardahl, Int'l Corp., 431 P.2d 961, 967-68 (Wash. 1967). This approach was adopted in Thompson v. Department of Licensing, 982 P.2d 601, 607 (Wash. 1999). According to the Thompson court, "[w]e note our case law on this injustice element is most firmly rooted in procedural unfairness. '... Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" Id. at 608 (quoting In re Marriage of Murphy, 952 P.2d 624, 629 (Wash. Ct. App. 1998)). The Thompson court, however, went on to state:

> In summary, the injustice prong of the collateral estoppel doctrine calls from an examination primarily of procedural regularity. This is not to rule out substantive analysis entirely, as when, for instance, there is an intervening change in the law, or the law applicable at the time of the first hearing was not well-explained and required subsequent exposition. But where, as here, a party to the prior litigation had a full and fair hearing of the issues, and did not attempt to overturn an adverse outcome, collateral estoppel may apply, notwithstanding an erroneous result.

Thompson v. Dep't of Licensing, 982 P.2d at 610; see also Clark v. Baines, 84 P.3d 245, 249 (Wash. 2004) (the determination of whether application of the doctrine of collateral estoppel will work an injustice depends primarily on whether the earlier proceeding allowed for a full and fair hearing on the issue in question in the current proceeding).[14]

The court in Christensen v. Grant County Hosp. Dist. No. 1 offered further definition as to when procedural injustice would occur under Washington law. "Three additional factors must be considered under Washington law before collateral estoppel may be applied to agency findings: (1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." Christensen v. Grant County Hosp. Dist. No. 1, 96 P.3d at 961-62. According to the Christensen court, the party against whom collateral estoppel will be applied must have had a full and fair opportunity to litigate the issue in the prior action. Id. at 962. "Accordingly, applying collateral estoppel may be improper where the issue is first determined after an informal, expedited hearing with relaxed evidentiary standards." Id. (citing State v. Vasquez, 59 P.3d 648, 650 (Wash. 2002); and State v. Williams, 937 P.2d 1052, 1057 (Wash. 1997)). The Christensen court also identified the situation in which the "disparity of relief may be so great that a party would be unlikely to have vigorously litigated the crucial

---

[14] The court in State Farm Mutual Automobile Insurance Company stated: "However, 'injustice' means more than that the prior decision was wrong. When faced with a choice between achieving finality and correcting an erroneous result, we generally opt for finality." State Farm Mut. Auto. Ins. Co. v. Avery, 57 P.3d at 304 (citing In re Marriage of Brown, 653 P.2d 602, 603 (Wash. 1982)).

issues in the first forum and so it would be unfair to preclude relitigation of the issues in a second forum." Christensen v. Grant County Hosp. Dist. No. 1, 96 P.3d at 962.[15]

Examples in which a prior hearing was found to be more informal, or had relaxed evidentiary standards, compared to the more formal, subsequent hearing, are: a Department of Social and Health Services proceeding versus a criminal prosecution for welfare fraud, State v. Williams, 937 P.2d 1052, an administrative license suspension hearing versus a criminal prosecution for driving under the influence, State v. Vasquez, 59 P.3d 648, a parole revocation hearing versus a criminal prosecution for possession of drugs, State v. Dupard, 609 P.2d 961 (Wash. 1980), and a Personnel Board of Appeals hearing versus a civil suit for tortuous interference with employment, Reninger v Dep't of Corrections, 951 P.2d 782.  The Christensen and Thompson courts emphasized that an informal proceeding in a prior action may give rise to a finding that collateral estoppel would work an injustice if a plaintiff was precluded from a subsequent more formal proceeding.  See Christensen v. Grant County Hosp. Dist. No. 1, 96 P.3d at 962; see also Thompson v. Dep't of Licensing, 982 P.2d at 608-09.  The court in Christensen also recognized that public policy reasons can weigh against application of the collateral estoppel doctrine. Christensen v. Grant County Hosp. Dist. No. 1, 96 P.3d at 962; see also State v. Vasquez, 59 P.3d at 650 (The Washington Supreme Court "may qualify or reject collateral estoppel when its application would contravene public policy.").

Gerald and Kathryn Ray argue that procedural injustice occurred in their case in state court when the Court of Appeals of Washington engaged in fact finding on its own, the result of which was a finding not based on the record before it. The fact finding at issue, as alleged by the plaintiffs, is that the Court of Appeals of Washington found that the Hilchkanum deed was written by a B.J. Tallman, which according to the Rays, ignored evidence in the record.  As a result, plaintiffs argue that the Rays did not have an opportunity for full and fair litigation.  Plaintiffs assert that no party had suggested that B.J. Tallman drafted the deed instead of the railroad, or that the Hilchkanum deed was in B.J. Tallman's handwriting.  According to plaintiffs, this finding by the Court of Appeals of Washington allowed the court to use an adverse inference and apply Washington law that ambiguities in the deed be construed against the party who drafted the deed, that is, against the grantors, the Hilchkanums, and, therefore, against the Rays.  The Court of Appeals of Washington stated:

> [E]xamination of the deed shows that it is entirely handwritten, apparently by the same person.  Both the language of the main part of the deed, as well as the acknowledgment, is in the handwriting of the notary who acknowledged the signatures of the Hilchkanums, B.J. Tallman.  Nothing in the record before us indicates that he was the agent of the Railway.

---

[15] The court in the Reninger case gave an example: "Where relatively small amounts are at stake, the incentive to vigorously litigate the matter may be small." Reninger v. Dep't of Corrections, 951 P.2d at 790 (quoting Lewis v. Int'l Bus. Mach. Corp., 393 F. Supp. 305, 308 (D. Or. 1974)).

Absent such proof, we fail to see why we should construe ambiguities in the May 1887 deed against the Railway.

Ray v. King County, 86 P.3d at 194 (footnoted omitted).

Defendant argues that no procedural injustice occurred as a result of the actions of the Court of Appeals of Washington in Ray v. King County.  Defendant notes that the decision by the Court of Appeals was after a decision on summary judgment issued by the lower court.  The defendant quotes Reynolds v. Hicks, 951 P.2d 761 (Wash. 1998), for the proposition, "[w]hen reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." Id. at 763.  The defendant also argues that the majority decision in Ray v. King County did not rely on the fact that B.J. Tallman drafted the deed, that such finding was irrelevant to the court's decision in Ray v. King County, and that the Court of Appeals of Washington did not base its conclusions on deed ambiguity.   Therefore, defendant argues, on this ground, the Rays were not denied a full and fair opportunity to litigate the Hilchkanum deed.

Under Washington law, an appellate court engages in the same inquiry as the trial court, and may engage in fact-finding, when reviewing an opinion on summary judgment.  See  Post v. City of Tacoma, 217 P.3d 1179, 1183 (Wash. 2009); Herring v. Texaco, Inc., 165 P.3d 4, 7 (Wash. 2007) ("We review summary judgment de novo…."); Morin v. Harrell, 164 P.3d 495, 497 (Wash. 2007); Citizens for Responsible Wildlife Mgmt. v. State, 71 P.3d 644, 649 (Wash. 2003); MacLean Townhomes, L.L.C. v. Am. 1st Roofing & Builders, Inc., 138 P.3d 155, 157 (Wash. Ct. App. 2006).  Plaintiffs rely on Old Windmill Ranch v. Smotherman, 418 P.2d 720 (Wash. 1966) and Heriot v. Lewis, 668 P.2d 589 (Wash. Ct. App. 1983), for the proposition that appellate courts are not to engage in fact-finding.  However, neither Old Windmill Ranch v. Smotherman, 418 P.2d at 721, nor Heriot v. Lewis, 668 P.2d at 592-93, were decided on summary judgment.  Both cases were decided after trial, including testimony and a developed record.  Although both decisions acknowledged that appellate courts should not engage in fact-finding, both decisions were addressing appellate fact-finding after final trial judgments, not decisions on appeal from summary judgments.

The Court of Appeals of Washington engaged in the proper scope of review to examine the appellate record and drew conclusions based on the documents in the record before the court.  The Court of Appeals reviewed the Hilchkanum deed in the record and concluded that B.J. Tallman drafted the deed.  The court reached this result by determining that the handwriting on the deeds was the same as the handwriting of the notary, B.J. Tallman.   See Ray v. King County, 86 P.3d at 194.  However, the court's decision does not indicate that the court's conclusion to affirm the lower court's holding in favor of King County was reliant on a determination that B.J. Tallman drafted the deed.

Furthermore, once the Rays took issue with the decision of the Court of Appeals of Washington, their recourse was an appeal to the Washington Supreme Court.  The Rays, in fact, petitioned the Washington Supreme Court to review their case, but the

Washington Supreme Court declined the petition for review of the intermediate appellate court decision.[16]   Under these facts and circumstances, the court concludes that the Gerald and Kathryn Ray did not suffer procedural injustice.

Plaintiffs also argue that substantive injustice will occur if the Rays are collaterally estopped from relitigating the Hilchkanum deed.   Plaintiffs look to the language in Thompson v. Department of Licensing, in support of their argument that at the time the state court case was in litigation, the law was "not well-explained and required subsequent exposition."   Thompson v. Dep't of Licensing, 982 P.2d at 610. Plaintiffs contend that at the time Ray v. King County was decided: "Washington law regarding the fee/easement issue was not well explained and required subsequent exposition."   According to the plaintiffs, subsequent exposition came in the form of the Washington Supreme Court's decision in Kershaw Sunnyside Ranches v. Yakima Interurban Lines Association. 126 P.3d 16 (Wash. 2006).   Plaintiffs argue that Brown v. State, in which the Washington State Supreme Court described seven factors by which to perform an analysis of railroad right of way deeds, Brown v. State, 924 P.2d at 912, "created its own ambiguities."   Plaintiffs assert that because the Brown factors rely on subjective evaluations, the decision in Brown v. State created an untenable situation, as a result of which different courts can reach conflicting conclusions based on similar language.   Therefore, the plaintiffs argue, it would be a substantive injustice to apply collateral estoppel against the Rays.

Defendant contends that plaintiffs' argument is based upon the false premises that Washington law regarding the interpretation of railroad deeds was unclear when Ray v. King County was decided.   Further, defendant argues that plaintiffs' reliance on Thompson v. Department of Licensing is misplaced because the language relied on by plaintiffs was dicta and plaintiffs fail to cite even one decision in which it was held unjust to apply collateral estoppel because the applicable law at the time was not well-explained and required subsequent exposition.

In Brown, the Washington Supreme Court indicated that, on the railroad deed fee versus easement issue, decisions "usually turn on a case-by-case examination of each deed" and that the "intent of the parties is of paramount importance."   Brown v. State, 924 P.2d at 911; see also Schroeder v. United States, 66 Fed. Cl. at 510.   Although not necessarily recognizing "ambiguities," at the request of plaintiffs, this court requested certification and further guidance from the Washington State Supreme Court regarding application of how to apply Washington state law on the Brown seven factors. Schroeder v. United States, 66 Fed. Cl. 508.   This court wrote:

> After reviewing the numerous Washington state court opinions interpreting
> private deeds conveying railroad rights-of-way, this court believes that the

---

[16] The dissenting opinion in Ray v. King County disagreed with majority opinion about how to construe the Hilchkanum deed, so the issue was known to the Washington Supreme Court when the Washington Supreme Court reviewed the Rays' petition.   Ray v. King County, 86 P.3d at 197-98 (Baker, J. dissenting).

lower courts in the State of Washington, as well as federal courts would benefit from further guidance from the Supreme Court of Washington. Although the highest court in the state has identified a list of review criteria, deed interpretation regarding railroad rights-of-way has taken two parallel tracks. On the one hand, some Washington state courts adhere to the strict presumption that if the purpose of a deed is to grant a right-of-way to a railroad, and the deed uses the term "right-of-way" in its granting clause, then the deed passes an easement only. See Veach v. Culp, 92 Wash.2d [570] at 574, 599 P.2d 526 [1979], Swan v. O'Leary, 37 Wash.2d [533] at 537, 225 P.2d 199 [1950], Morsbach v. Thurston County, 152 Wash. [562] at 565, 278 P. 686 [1929]; Hanson Indus., Inc. v. County of Spokane, 114 Wash.App. [523] at 529, 58 P.3d 910 [2002]. On the other hand, a Washington state court panel has chosen which of the seven factors identified in Brown to apply or has turned to reviewing "other considerations," also acknowledged in Brown, as an element to ascertain the intent of the parties. See Brown v. Washington, 130 Wash.2d at [430] 438, 924 P.2d 908; Ray v. King County, 120 Wash.App. [564] at 576, 86 P.3d 183.

Schroeder v. United States, 66 Fed. Cl. at 517. Two questions regarding deed construction were certified to the Washington Supreme Court seeking clarity on deed construction for a right of way in railroad deeds. Schroeder v. United States, 66 Fed. Cl. 508. The Washington Supreme Court, in a very brief order, denied this court's request for certification, believing that Washington State law was clear. The Washington Supreme Court stated:

> The court is of the view that, in light of existing precedent such as Brown v. State, 130 Wn.2d 430, 924 P.2d 908 (1996) and Ray v. King County, 120 Wn. App. 564, 86 P.3d 183, review denied, 152 Wn.2d 1027 (2004), the questions posed by the federal court are not "question[s] of state law ... which [have] not been clearly determined."

Order at 1-2 (Wash. Oct. 7, 2005) (quoting RAP 16.16(a)) (omissions in original). The question, now before the court, is whether Gerald and Kathryn Ray, who previously litigated their property rights in the Washington state courts, should be given an opportunity to relitigate the issues directly raised in the state court proceedings regarding the fee versus easement interpretation of the Hilchkanum deed, not whether the Washington State Supreme Court is confident in the clarity of its decisions.

This court does not believe that the subsequent exposition in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association, 126 P.3d 16, a Washington State Supreme Court decision, warrants a finding that collateral estoppel would work an injustice to the Rays. While Kershaw may have refined deed construction regarding railroad deeds somewhat, it did not change the holding of the previous precedential case in Washington State, Brown v. State, 924 P.2d 908. Rather, the court in Kershaw retained the Brown analysis, using the factors identified in Brown to determine the

parties' intent.  See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 23 ("We thus consider whether additional analysis of the deed language using the Brown factors, set forth above, sheds any light on the parties' intent.").  The Kershaw court, in a footnote, affirmed that the Washington Supreme Court was relying on the analysis and approach in Brown v. State: "[t]he analytical approach espoused in Brown, while often fact determinative, has largely reconciled the conflicting presumptions and case law and remaining focused 'on the intent of the parties,' we build upon that approach today." Id. at 21 n.5 (quoting Brown v. State, 924 P.2d at 911).  Further, the opinion in Kershaw noted that, the court "maintains Brown's instruction that reviewing courts perform a thorough examination of railroad deed based on Brown's enumerated factors." Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 25.

The decision in Ray v. King County regarding the Hilchkanum deed was issued after Gerald and Kathryn Ray were afforded a full and fair opportunity to litigate on their own behalf.  The Washington State Court of Appeals rejected the Rays' arguments and the Washington State Supreme Court denied further review when the court declined the Rays' petition for review.  No procedural irregularities directly affecting the decision were identified and the state court decisions in the Rays' particular case should be given preclusive effect.  Gerald and Kathryn Ray should not be allowed to relitigate their same claim in this court.  Gerald and Kathryn Ray, therefore, are collaterally estopped from challenging the construction of the Hilchkanum deed. As examined below, this conclusion may have the odd result of the Rays not having a cause of action, while the Ray co-plaintiffs potentially retain causes of action stemming from the same, underlying, Hilchkanum deed.  The Rays, however, unlike the Ray co-plaintiffs, attempted to quiet title in the Washington state courts, Ray v. King County, No. 00-2-14946-8SEA, and have had their day in court.  The application of collateral estoppel is proper against Gerald and Kathryn Ray.

**Collateral Estoppel Applied Against the Ray Co-Plaintiffs**

Defendant argues that, in addition to having the court invoke collateral estoppel against Gerald and Kathryn Ray regarding their attempt to relitigate the Hilchkanum deed in this court, the Ray co-plaintiffs, whose property rights also derive from the Hilchkanum deed, likewise should be collaterally estopped from relitigating the fee/easement issue.  The defendant contends that: "All of the co-plaintiffs in Ray are in privity with the Rays, because they all stand in the same shoes with the Hilchkanums. The co-plaintiffs and the Rays, therefore have a mutual, identical interest with respect to the title to property at issue, namely, the May 9, 1887 deed conveying the right of way to the railroad." Plaintiffs assert that the defendant incorrectly analyzes the case law on privity, and that for the United States to prevail, defendant would have to show that the co-plaintiffs are in privity with the Rays, not with the Hilchkanums, who were not a party to the earlier state court lawsuit in Ray v. King County, 86 P.3d 183.  Moreover, according to the plaintiffs, privity only extends to those who represent the interests of others with the authority to do so, and no such authority existed with respect to Gerald

and Kathryn Ray and the <u>Ray</u> co-plaintiffs in the suit brought in Washington State to quiet title regarding only Gerald and Kathryn's Ray's property interest.

As discussed above, the four part test for collateral estoppel under Washington law is:

> (1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied.

<u>In re Stout</u>, 150 P.3d at 97.

Application of the first two elements of collateral estoppel are not disputed. The issue decided in <u>Ray v. King County</u>, construction of the Hilchkanum deed, also is at issue for a number of the plaintiffs in the consolidated cases. Moreover, <u>Ray v. King County</u> resulted in a final judgment on the merits in a competent forum. Regarding the <u>Ray</u> co-plaintiffs, the third element of collateral estoppel, that "the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication," requires further examination, as may the fourth element, that, "precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied." <u>In re Stout</u>, 150 P.3d at 97.

As noted above, the party asserting the affirmative defense of collateral estoppel bears the burden of establishing that the <u>Ray</u> co-plaintiffs were "a party or in privity with a party to the prior adjudication." <u>Id.</u> Under Washington law, although explained in a <u>res</u> judicata context:

> "'Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts. Privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property….'"

<u>In re Coday</u>, 130 P.3d 809, 818 (Wash. 2006) (quoting <u>Owens v. Kuro</u>, 354 P.2d 696, 699 (Wash. 1960) (quoting <u>Sodak Distrib. Co. v. Wayne</u>, 93 N.W.2d 791, 795 (S.D. 1958))). In <u>United States v. Deaconess Medical Center</u>, the Washington Supreme Court adopted the same privity definition for collateral estoppel, using the often-quoted language from <u>Owens v. Kuro</u> and <u>Sodak Distribution Co. v. Wayne</u>. <u>See</u> <u>United States v. Deaconess Medical Center</u>, 994 P.2d 830, 833 (Wash. 2000).

Relevant to the inquiry regarding the <u>Ray</u> co-plaintiffs is that, "[a]ccording to the rule stated in <u>Deaconess Medical Center</u> and <u>Mottet v. Dean</u>, privity based on a

successive relationship to the same property arises only if the adjudication of an owner's asserted rights in the property has already occurred when the owner transfers the property to a successor.  In such a situation, collateral estoppel applies to prevent the successor from relitigating issues already determined against the original owner." Spahi v. Hughes-Northwest, 27 P.3d 1233, 1239 (Wash. Ct. App.), modified, 33 P.3d 84 (Wash. Ct. App. 2001); see also State ex rel. Dean by Mottet v. Dean, 783 P.2d 1099, 1101 (Wash. Ct. App. 1989); Owens v. Kuro, 354 P.2d at 699.  Therefore, privity is defined narrowly in a collateral estoppel examination.  The court in Mottet v. Dean further explained:

> The justification for a strict construction is simple.  Where the parties against whom collateral estoppel is being asserted have had no previous opportunity to raise certain issues, their claim on those issues should not be barred.  On the other hand, one whose property interests have already been asserted and litigated by his or her predecessor should be prevented from reasserting and relitigating the same interests.

State ex rel. Dean by Mottet v. Dean, 783 P.2d at 1101.  "An estoppel must be mutual and cannot apply for or against a stranger to a judgment since a stranger's rights cannot be determined in his absence from the controversy."  Owens v. Kuro, 354 P.2d at 699. Fairness mandates that parties have at least one opportunity to litigate issues before a court.  Id. at 698-99.

In the case before this court the Rays and the Ray co-plaintiffs, whose property rights derive from the Hilchkanum deed, must resolve the question raised in Ray v. King County, namely, did the Hilchkanum deed provide an easement or a fee simple right of way interest to the railroad?  The cases cited above make clear that any subsequent owner of Gerald and Kathryn Ray's same property interest would be barred from relitigating the Hilchkanum deed, right of way issue, as that subsequent owner would be in privity with the Rays.  This commonality of issue, however, does not give rise to a relationship which results in privity between the Rays and the Ray co-plaintiffs for the purposes of estoppel.   Although the Ray co-plaintiffs, whose deeds also derive from the Hilchkanums, share the same source deed as the Rays, they are not successors in interest to the Rays.  Each of the Ray co-plaintiffs holds an interest in land separate from the Rays, land which passed through different chains of title.  Nor, as alluded to by defendant, should the Ray co-plaintiffs be penalized because they engaged an individual, in whom they had confidence to represent them, who has no interest in the properties at issue, just because he also represented the Rays in Ray v. King County.

The defendant relies on a number of cases which are difficult to follow as supportive of the defendant's position.  For example, defendant cites the court to Douthitt v. MacCulsky, 40 P. 186 (Wash. 1895), for the proposition that collateral estoppel bars nonparties who have a substantial identity with a party to the prior litigation.  Defendant quotes the following language which states: "'[t]he term "privity" denotes **mutual** or successive **relationship to the same rights of property**.  The ground, therefore, upon which persons standing in this relation to the litigating party are

bound by the proceedings to which he was a party, is that **they are identified with him in interest**; and, wherever this identity is found to exist, all are alike concluded.'" <u>Id.</u> at 189 (quoting Greenleaf, 1 Law of Evidence § 522-23) (emphasis added by the defendant).  Not only do the facts in <u>Douthitt</u> differ greatly from those in the present case, but the phrase "the same rights of property" highlights an important distinction:  The Rays and the <u>Ray</u> co-plaintiffs have different property rights, and are litigating about different land parcels.  In <u>Douthitt</u>, the plaintiffs, husband and wife, sought to enjoin the enforcement of a number of mechanics' liens.  <u>Douthitt v. MacCulsky</u>, 40 P. at 187.  Earlier, several foreclosure actions had been brought, all named the husband as a defendant, while only some named the wife.  The court, after consolidating the actions, found for the lien holders.  <u>Id.</u>  The husband and wife sought to enjoin the enforcement, claiming the wife could not be bound by the judgments as she was not a party to all of the actions.  <u>Id.</u> at 187-88.  The court concluded that the wife was bound by the litigation proceedings and had knowledge of the ongoing litigation.  The court stated: "[t]he respondent Nellie Douthitt, in addition to being an actual party defendant in some of the foreclosure suits, had full knowledge of the existence of the others being prosecuted against this property; also of the fact that her husband had actually appeared in them …. She permitted the litigation to proceed in the way that it did proceed, understanding its nature and its possible results."  <u>Id.</u> at 189.  The language in <u>Douthitt</u> speaks to the shared interest of a husband and wife in a community property state.  The <u>Ray</u> co-plaintiffs, however, were not involved in the <u>Ray v. King County</u> lawsuit, nor do they share a relationship, with Gerald and Kathryn Ray, such as husband and wife, in a community property state, with the same adherent property interests and responsibilities.  Furthermore, all the <u>Ray</u> co-plaintiffs did not necessarily have knowledge of the litigation during the trial, as did Nellie Douthitt in <u>Douthitt</u>.

Both defendant and plaintiffs cite to <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d 996 (9th Cir. 1980).  The defendant cites to <u>ITT Rayonier</u> for the proposition that: "[c]ourts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata."  <u>Id.</u> at 1003 (citing <u>Jackson v. Hayakawa</u>, 605 F.2d 1121, 1126 (9th Cir. 1979), <u>cert</u>. <u>denied</u>, 445 U.S. 952 (1980)).  The language that the defendant cites from <u>ITT Rayonier</u> relates to a discussion of the virtual representation doctrine, an exception to the privity requirement, which is discussed below.  The United States Court of Appeals for the Ninth Circuit explained: "Courts have recognized that a non-party may be bound if a party is so closely aligned with its interests as to be its 'virtual representative.'" <u>Id.</u> (citations omitted).  The plaintiffs also cite to <u>ITT Rayonier</u>, but for language that states, "the doctrine of privity extends the conclusive effect of a judgment to nonparties who are in privity with parties to an earlier action" and "[f]urther 'privy' may include those whose interests are represented by one with the authority to do so."  <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d at 1003 (citations omitted).  In <u>ITT Rayonier</u>, the Ninth Circuit found that the Washington State Department of Ecology (DOE) and the United States Environmental Protection Agency (EPA) were in privity and collateral estoppel applied.  The <u>ITT Rayonier</u> court indicated its decision was based on the following: "In some contexts, the relationship between governmental authorities as public enforcers of ordinances and private parties suing for enforcement as private attorneys general is close enough to preclude relitigation.  The

instant situation presents an analogous relationship. Both DOE and the EPA acted to enforce the same permit." Id. (citation omitted).

Defendant is unable to establish that the Ray co-plaintiffs were in privity with Gerald and Kathryn Ray or participated in the Ray v. King County litigation in the Washington state courts in any meaningful way. Therefore, the third element of collateral estoppel has not been established, with regard to the Ray co-plaintiffs. Since the Washington Supreme Court in In re Stout used the connector "and" when describing the four part test to establish collateral estoppel, In re Stout, 150 P.3d at 97, the court need not examine the fourth element of collateral estoppel to determine if preclusion would result in an injustice to the Ray co-plaintiffs. Nonetheless, the court notes because the Ray co-plaintiffs were not in privity with Gerald and Kathryn Ray and were not parties to the litigation in Ray v. King County, injustice is easy to establish. Under our system of justice litigants are entitled to their day in court. Public policy dictates that the failure to provide a full and fair opportunity to be heard is, by definition, an injustice. See Thompson v. Dep't of Licensing, 982 P.2d at 610, discussed above.

**Virtual Representation**

The defendant argues alternatively that even if the Ray co-plaintiffs were not in privity with Gerald and Kathryn Ray, "at least fourteen co-plaintiffs should be collaterally estopped" under the virtual representation doctrine. The defendant claims that "fourteen co-plaintiffs directly participated in Ray v. King County by filing an amicus brief supporting the Rays' petition for review by the Washington Supreme Court."[17] Defendant contends that the co-plaintiffs had knowledge of the previous action and "were aware of the importance of the issue" as evidenced by filing the amicus brief, therefore meeting the participation requirement. The defendant relies on Garcia v. Wilson, 820 P.2d 964 (Wash. Ct. App. 1991), to argue that, "[a]n analysis of the factors identified in Garcia to apply virtual representation doctrine, here, leads to the conclusion that at least fourteen co-plaintiffs should be collaterally estopped." The plaintiffs

---

[17] The fourteen co-plaintiffs identified by defendant as signing the amicus brief in Ray v. King County are: Martin and Carol Chamberlin; Craig and Tammy Owens; Frederic and Linda Vicik; Steven and Karin Farrar; Hank and Eden Waggoner; Lester and Barbara Peterson; Lauren Jenkins; and Terry Pietromonaco. The names were confirmed by plaintiffs' counsel at oral argument. The court notes, however, that while Martin Chamberlin signed the amicus brief, Carol Chamberlin did not, likewise Frederic Vicik signed the amicus brief, but Linda Vicik did not. Similarly Hank Waggoner signed the amicus brief, but Eden Waggoner did not; Barbara Peterson signed the amicus brief, but Lester Peterson did not. Finally, the defendant cites Terry Pietromonaco as signing the amicus brief, and also cites Joanne T. Pietromonaco as having signed the amicus brief. Terry Pietromonaco also is listed as J. Terry Pietromonaco in the complaint. Because the court concludes below that virtual representation does not apply to the co-plaintiffs, the court does not need to separately identify which of the fourteen individuals would or would not be collaterally estopped by the virtual representation doctrine.

disagree that the filing of the amicus brief warrants a finding of virtual representation and properly notes: "The present case is factually distinct from <u>Garcia v. Wilson</u>."

In <u>Garcia</u>, the plaintiff, Elvia Garcia, a passenger in a car, filed suit against the defendants for injuries sustained in a car accident.  Earlier, Teodoro Macias, the driver of the car, had filed suit against the same defendants and judgment had been entered for the defendants.  <u>Id.</u> at 965. In addition to being involved in the very same accident, Elvia Garcia and Teodoro Macias were living together at the time of the Macias trial, Elvia Garcia was a witness in that litigation and was aware of the issues and nature of the first action. The court in <u>Garcia v. Wilson</u> analyzed Washington State's recognition of the virtual representation doctrine.  Indeed, many subsequent Washington state court decisions that examine virtual representation refer to, or quote from, the opinion in <u>Garcia</u>.  In its analysis, the <u>Garcia</u> court defined the virtual representation doctrine, as follows: "Washington recognizes what has been termed the virtual representation doctrine.  This doctrine allows collateral estoppel to be used against a nonparty when the former adjudication involved a party with substantial identity of interests with the nonparty.  Of course, such preclusion must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court."  <u>Id.</u> at 966-67 (footnote omitted).

The court in <u>Garcia v. Wilson</u> identified a number of factors to consider in applying virtual representation:

> The primary factor to be considered is whether the nonparty in some way participated in the former adjudication, for instance as a witness.  The issue must have been fully and fairly litigated at the former adjudication. That the evidence and testimony will be identical to that presented in the former adjudication is another important factor.  Finally, there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so.

<u>Id.</u> at 967 (footnotes omitted).  Notably, the court identified participation in the previous action as the most significant, or primary factor to consider.  The court also stressed the need for some sort of manipulation with respect to the two proceedings on the part of the nonparty in order for virtual representation to apply.  In <u>Garcia</u>, the court found such manipulation had occurred.  <u>Id.</u>

Subsequently, the court in <u>World Wide Video of Washington, Inc. v. City of Spokane</u>, 103 P.3d 1265 (Wash. Ct. App. 2005), explained that, "[i]f this interested witness could have intervened but chose not to for tactical reasons, he or she suffers no injustice from application of collateral estoppel."  <u>Id.</u> at 1274 (citing <u>Hackler v. Hackler</u>, 683 P.2d 241, 243 (Wash. Ct. App. 1984), <u>review</u> <u>denied</u>, 1984 WL 287657 (Wash. Oct. 19, 1984) and <u>Garcia v. Wilson</u>, 820 P.2d at 967).  The court in <u>Stevens v. Futurewise</u>, indicated that "Washington courts apply this doctrine only when the

nonparty participated in the former adjudication, for instance as a witness, and when there is evidence that the subsequent action 'was the product of some manipulation or tactical maneuvering.'" Stevens v. Futurewise, 192 P.3d 1, 9 (Wash. Ct. App. 2008) (quoting Garcia v. Wilson, 820 P.2d at 966-67). Likewise, the court in Everett v. Perez, 78 F. Supp. 2d 1134 (E.D. Wash. 1999), emphasized that "'there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene.'" Id. at 1140 (quoting Garcia v. Wilson, 820 P.2d at 967) (emphasis in original).

Other Washington state courts have not referred to virtual representation by name, instead referring to "an exception to the requirement that one be a party or in privity with a party to the prior litigation." Hackler v. Hackler, 683 P.2d at 243; see also Bacon v. Gardner, 229 P.2d 523 (Wash. 1951). The court in Hackler v. Hackler explained the long-standing exception to the privity rule as: "[o]ne who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party." Hackler v. Hackler, 683 P.2d at 243; see also Youngquist v. Thomas, 83 P.2d 337, 341 (Wash. 1938), judgment amended, 97 P.2d 1120 (Wash. 1937); Briggs v. Madison, 82 P.2d 113, 115 (Wash. 1938); Howard v. Mortensen, 258 P. 853, 855 (Wash. 1927); Am. Bonding Co. v. Loeb, 92 P. 282, 283 (Wash. 1907); Shoemake v. Finlayson, 60 P. 50, 51 (Wash. 1900).

Virtual representation must be determined on a case-by-case basis with specific focus on the facts of each case. Washington courts have "emphasize[d] that application of collateral estoppel to a nonparty necessarily depends on the particular facts presented," Garcia v. Wilson, 820 P.2d at 968, and that any "preclusion through use of the doctrine of virtual representation 'must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court.'" Frese v. Snohomish, 120 P.3d 89, 93 (Wash. Ct. App. 2005) (quoting Garcia v. Wilson, 820 P.2d at 966-67).

The United States Court of Appeals for the Seventh Circuit, in Tice v. American Airlines, Inc., 162 F.3d 966 (7th Cir. 1998), reh'g and suggestion for reh'g en banc denied (7th Cir.), cert. denied, 527 U.S. 1036 (1999), offered a clear summation of the dangers of virtual representation, albeit in the context of res judicata.

> We think the term "virtual representation" has cast more shadows than light on the problem to be decided. As a matter of fact, a finding that nonparties were virtually represented in earlier litigation has rarely been used actually to bar litigation. As far as we can tell, no published opinion by this court has done so, although one unpublished order has, see Henderson v. Stone, 930 F.2d 25 (table), 1991 WL 54855 (7th Cir. 1991), and the doctrine was of indirect relevance in another order. Goodluck v. City of Chicago, 70 F.3d 1274 (table), 1995 WL 687637 (7th Cir. 1995). The Wright treatise observes that "[a]ll of the cases that in fact preclude relitigation by a nonparty have involved several factors in addition to apparently adequate litigation by a party holding parallel interests."

Wright, § 4457 (1998 Supp.) at 420.  Examples of these additional factors include control or participation in the earlier litigation, acquiescence, deliberate maneuvering to avoid the effects of the first case, or the close relationship between the parties to the various cases.

These factors are all merely heuristics, however, shortcuts that courts use to determine the answer to the real (fact-specific) question-whether there was (or should be implied at law) the kind of link between the earlier and later plaintiffs that justifies binding the second group to the result reached against the first.  <u>See</u> <u>also</u> <u>McNealy v. Caterpillar, Inc.</u>, 139 F.3d 1113, 1116-17 (7th Cir. 1998) (preclusion improper where the issues litigated in the two actions are different).  This is, of course, the same question we and other courts have already identified as the crux of the privity inquiry.  A proper functional analysis of privity, focusing on the general question whether the earlier parties were in some sense proper agents for the later parties, would therefore support preclusion in the cases that have used the lingo of virtual representation.  Conversely, if a relationship between a nonparty and an earlier litigant does not satisfy this analysis, serious due process problems would arise if the earlier nonparty were barred from her own day in court.

<u>Tice v. American Airlines, Inc.</u>, 162 F.3d at 971 (emphasis in original; selected citations omitted); <u>see</u> <u>also</u> <u>Kerr-McGee Chem. Corp. v. Hartigan</u>, 816 F.2d 1177, 1181 (7th Cir. 1987) ("Although a nonparty may be bound because of the control that it exerts over litigation, the degree of control justifying preclusion of a nonparty 'should be enough that the nonparty has the actual measure of control or opportunity to control that might reasonably be expected between two formal coparties.' 18 Wright § 4451, at 430 (footnote omitted). Participation as an <u>amicus</u> <u>curiae</u> does not provide the requisite degree of control. <u>See</u> <u>TRW, Inc. v. Ellipse Corp.</u>, 495 F.2d 314, 318 (7th Cir. 1974) ('TRW limited its role in the prior suit to observing the proceedings and to filing amicus curiae briefs. These are insufficient modes of participation to render applicable the doctrine of <u>res judicata</u>.') (citation omitted).").

Similarly, in <u>Munoz v. Imperial County</u>, the United States Court of Appeals for the Ninth Circuit concluded that "the filing of an amicus brief has never been enough to bind a non-party to the results of a proceeding." <u>Munoz v. Imperial County</u>, 667 F.2d 811, 816 (9th Cir.), <u>cert.</u> <u>denied</u>, 459 U.S. 825 (1982).  In <u>Munoz</u>, the plaintiff signed an amicus brief and also signed a declaration for a party in the state court proceedings. "However, the amicus brief and the declaration fall far short of the control exerted in <u>Montana v. United States</u>, [440 U.S. 147, 154 (1979)],… where the court concluded that a party had a sufficient 'laboring oar' in the conduct of state-court litigation to actuate principles of estoppel." <u>Munoz v. County of Imperial</u>, 667 F.2d at 816-17 (quoting <u>Montana v. United States</u>, 440 U.S. at 154).  Likewise, the court in <u>L.E. Myers Co. v. United States</u>, declared: "It is axiomatic that an <u>amicus</u> <u>curiae</u> is not an actual party to litigation.  Furthermore, the act of filing an amicus brief alone has never been sufficient

to bind a nonparty to the results of a proceeding."  L.E. Myers Co. v. United States, 10 Cl. Ct. 617, 619 (1986).

The United States Supreme Court, as far back as 1887, wrote:

It is not an uncommon thing in this court to allow briefs to be presented by or on behalf of persons who are not parties to the suit, but who are interested in the questions to be decided, and it has never been supposed that the judgment in such a case would estop the intervenor in a suit of his own which presented the same questions. It could be used as a precedent, but not as an estoppel, in the second suit.

Stryker v. Crane, 123 U.S. 527, 540 (1887).  Thus, the filing of an amicus brief is not sufficient participation in a proceeding to bind the party that filed an amicus brief to the result of the proceeding.

Another factor in analyzing the virtual representation exception is whether the evidence and testimony will be identical to that presented in the former adjudication.  At issue in Ray v. King County was the nature of the interest the Hilchkanum deed conveyed to SLS&E.   Defendant argues that "nothing is accomplished by allowing the second action by the co-plaintiffs, because they substantially rely upon the same evidence as the Rays in their quiet title action."  In response, plaintiffs argue that while "a few items of evidence are the same," there are numerous pieces of evidence that were not introduced in the first action that will be offered into evidence in the present action, including: "numerous newspaper articles, deeds, information regarding Judge Burke, B.J. Tallman, 'Railroad Avenue,' and numerous other documents."  While it is not certain that the additional evidence plaintiffs seek to introduce will be material or dispositive to the outcome of the litigation, additional evidence may be introduced in this court.  The co-plaintiffs are entitled to present their own case, and the two proceedings may not be identical.  In fact, the defendant does not argue that the evidence will be identical, and only asserts that the evidence will be "substantially" similar.

"Finally, there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so."  Garcia v. Wilson, 820 P.2d at 967 (footnote omitted).  In the present case, there is no evidence that the co-plaintiffs' participation or failure to participate in Ray v. King County in the state courts was the result of manipulation.  Defendant offers no evidence that the Rays and the co-plaintiffs conspired to use two possible proceedings to gain a tactical advantage.  Nor does defendant suggest that the co-plaintiffs who joined the amicus brief, could have or were obligated to intervene in the prior action.  The quiet title action against King County was brought by Gerald and Kathryn Ray and addressed only their individual property interest, not those of any co-plaintiffs.

In sum, the co-plaintiffs did not participate as testifying witnesses in Ray v. King County, which was decided originally on motions for summary judgment, nor did the co-

plaintiffs provide affidavits in the proceeding.  The fourteen or so co-plaintiffs' only apparent involvement in <u>Ray v. King County</u> was to sign on to the amicus brief submitted to the Washington Supreme Court.  Moreover, although the source Hilchkanum deed is the same for the co-plaintiffs as for Gerald and Kathryn Ray, there is no certainty that the evidence to be offered in this court will be identical to the evidence submitted in <u>Ray v. King County</u> in the Washington state courts. The <u>Garcia</u> factors do not support application of virtual representation to the "at least fourteen co-plaintiffs."  The co-plaintiffs are not barred by collateral estoppel from having their day in court regarding whether the Hilchkanum deed granted an easement or fee simple interest in the right of way given to the SLS&E.

## CONCLUSION

For the reasons stated above, the <u>Rooker-Feldman</u> doctrine does not bar presentation of plaintiffs' cases in this court.  Likewise, neither the doctrine of collateral estoppel nor the doctrine of virtual representation bars the actions brought by the <u>Ray</u> co-plaintiffs' in this court.  Application of the doctrine of collateral estoppel, however, does bar the action in this court brought by Gerald and Kathryn Ray.  As a result, the Clerk's Office shall **DISMISS**, with prejudice, the claims of Gerald and Kathryn Ray from Case No. 04-1457L, with Case No. 04-1457L redesignated as <u>Martin Chamberlin and Carol Chamberlin v. United States</u>.

In a subsequent opinion, the court will determine whether the Right of Way Deeds and the Quit Claim Deed conveyed an easement or a fee interest to the Seattle, Lake Shore & Eastern Railway Company and to the Northern Pacific Railway Company.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**